# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TYREE LAWSON,<br>        Plaintiff,<br><br>        v.<br><br>JAMIE FERDARKO,<br>        Defendant. | C.A. No. 15-177 Erie<br><br>Magistrate Judge Susan Paradise Baxter |

## MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I.    INTRODUCTION

### A.    Relevant Procedural History

On July 13, 2015, Plaintiff Tyree Lawson, an inmate currently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest"), initiated this civil rights action by mailing to this Court a request for IFP status and pro se complaint pursuant to 42 U.S.C. § 1983. Named as the sole Defendant is Jamie Ferdarko, a nurse at SCI-Forest. Lawson alleges that Ferdarko was deliberately indifferent to his serious medical condition, in violation of the Eighth Amendment to the United States Constitution. Defendant filed an Answer on January 5, 2016.

On January 6, 2016, the Court issued a Case Management Order [ECF No. 22], which provided in relevant part that Defendant shall file a pretrial narrative statement "and/or a motion for summary judgment" on or before May 16, 2016. On May 16, 2016, Defendant filed a

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. [ECF Nos. 4, 15].

1

MOTION FOR SUMMARY JUDGMENT [ECF No. 24] with brief, concise statement of material facts ("CSMF") and appendix in support [ECF Nos. 25, 26, 27]. Plaintiff has filed a Narrative Statement of Facts, an opposition to the CSMF, a brief in opposition to the motion, and a Declaration [ECF Nos. 31, 32, 33, 33-1]. Contrary to the argument in Plaintiff's brief [ECF No. 33 at 6-7], Defendant's motion is timely because it was filed on the date set forth in the Court's Case Management Order. The motion is ripe for disposition.

### B. Relevant Factual History

The parties have disputed many of the underlying facts in this case. The following facts have been drawn in the light most favorable to Plaintiff, as set forth in his Narrative Statement of Facts and Declaration, as well as the portions of Defendants' CSMF and Appendix that have not been disputed by Plaintiff.

On May 28, 2015, Lawson began feeling extreme discomfort in his groin area. On May 29, he completed an inmate sick call request form. The medical department does not generally take "walk-ins"; instead inmates need to schedule appointments unless there is an emergency. If an inmate comes to the medical department without being scheduled, he is assessed to make sure there is no emergency and then sent back to his unit. On June 3, 2015, at approximately 1:40 p.m., Lawson informed the unit pod officer that he was experiencing pain and discomfort in his groin and was sent to the medical department on an emergency pass. After a 5-10 minute wait, he was frisked by officers and placed in an examination room, where he encountered Nurse Ferdarko.

Lawson was hunched over in pain and holding his stomach. Ferdarko directed Lawson to sit. In response, Lawson explained that his pain got worse while sitting or walking. Lawson also

told Ferdarko that his urine had an odd rusty color. Ferdarko stated that Nurse Zupsic was unavailable to examine Lawson because she had other things to do. Ferdarko then informed Lawson that he was on the sick-call schedule and would be examined the next day, June 4. When Lawson requested to see a doctor, Ferdarko became rudely belligerent and gave him a direct order to return to his cell.

At about 8:15 a.m. on June 4, Nurse Zupsic examined Lawson. She discovered an odd stiffness or lump in his lower stomach and that his testicle appeared a bit swollen, and released him with instructions to place hot compression on his groin or stomach if the pain persisted. Zupsic also ordered an ultrasound, urine lab work and Tylenol as needed.

On June 5, 2015, Lawson was sent to the medical department to provide a scheduled urine sample. On June 24, 2015, he had the ultrasound, although the technician scanned only his groin area and not his abdomen. The Ultrasound Report found that Lawson's testicles were unremarkable and without evidence of testicular masses. He had an 8 mm cyst at the left epididymis. There was no evidence of hydrocele. [ECF No. 27, Exh. B at 6]. Lawson was next seen in sick call two months later, on August 26, 2015, for re-occurring pain in his groin and stomach area. The nurse practitioner who examined Lawson noted epididymitis vs. urinary tract infection ("UTI") and ordered urine lab testing and an antibiotic. On September 8, 2015, the doctor noted that the lab work was consistent with UTI. Plaintiff has had no subsequent medical complaints, other than a sore throat in April 2016.

Lawson filed a grievance against Ferdarko shortly after the incident, on June 4, 2015. Pursuant to DOC Inmate Grievance System Policy DC-ADM 804, the initial response to the grievance was due within fifteen working days, or June 26, 2015. Kim Smith, CHCA, admits that she failed to meet this deadline. [ECF No. 27, Exh. D]. On July 13, 2015, Lawson

3

initiated the instant federal lawsuit. In the Complaint, Lawson alleged that he had exhausted his administrative remedies because he had filed a grievance, and had not received a response to it within fifteen days as required by Policy DC-ADM 804. Smith issued a response, denying Lawson's grievance, on July 16, 2015.[2] Lawson never appealed this denial to the Superintendent.

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed. R. Civ. P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health Sys. v. Met. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The non-moving party must go beyond

---

[2] Smith's response was inadvertently dated November 17, 2014.

4

the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247–249.

**B.** *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v.

MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## III. DISCUSSION

Defendant seeks summary judgment arguing that Plaintiff failed to exhaust the prison grievance procedure and that there was no violation of Plaintiff's constitutional rights.

### A. Exhaustion of Administrative Remedies

#### 1. The Exhaustion Requirement

Failure to exhaust is an affirmative defense that must be pled and proven by the defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). "In a motion for summary judgment, where the movants have the burden of proof at trial, 'they [have] the burden of supporting their motion for summary judgment with credible evidence...that would entitle [them] to a directed verdict if not controverted at trial.' " Foster v. Morris, 208 Fed.App'x 174, 179 (3d Cir. 2006) quoting In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003). If "the motion does not establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented." Id. quoting Nat'l State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992).

The PLRA, 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The Supreme Court has held that the language of this provision "mandates that an inmate exhaust such administrative remedies as are available before bringing suit to challenge prison conditions." Ross v. Blake, ___ U.S. ___, 136 S.Ct. 1850, 1855 (June 6, 2016) (emphasis added).[3]

The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Id. at 1857 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."). The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). However, an inmate need only exhaust those administrative remedies which are "available" to him. See Robinson v. Superintendent, SCI Rockview, ___ F.3d ___, 2016 WL 4010438, at *4 (3d Cir. Jul. 27, 2016) quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("[W]e noted that the PLRA requires exhaustion of 'available' administrative remedies and defined such as those that are 'capable of use; at hand.'").

The PLRA's exhaustion requirement is strictly enforced by the courts. As the United States Court of Appeals for the Third Circuit has explained:

---

[3] The PLRA's exhaustion requirement "is a non-jurisdictional prerequisite." Small v. Camden County, 728 F.3d 265, 270 n.3 (3d Cir. 2013). See also Moneyham v. Potter, 2016 WL 3476416, at *3 n.6 (M.D. Pa. June 27, 2016) ("[T]he Supreme Court of the United States has held that PLRA exhaustion is a precondition to suit.").

7

> Courts have recognized myriad policy considerations in favor of exhaustion requirements. They include: (1) avoiding premature interruption of the administrative process and giving the agency a chance to discovery and correct its own errors; (2) conserving scarce judicial resources, since the complaining party may be successful in vindicating his rights in the administrative process and the courts may never have to intervene; and (3) improving the efficacy of the administrative process. Each of these policies, which Congress seems to have had in mind in enacting the PLRA, is advanced by the across-the-board, mandatory exhaustion requirement in § 1997e(a)… [A] comprehensive exhaustion requirement better serves the policy of granting an agency the opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Moreover, even if the complaining prisoner seeks only money damages, the prisoner may be successful in having the [prison] halt the infringing practice or fashion some other remedy, such as returning personal property, reforming personal property policies, firing an abusive prison guard, or creating a better screening process for hiring such guards. And when a prison obtains some measure of affirmative relief, he may elect not to pursue his claim for damages. In either case, local actors are given the chance to address local problems, and at the very least, the time frame for the prisoner's damages is frozen or the isolated acts of abuse are prevented from recurring. An across-the-board exhaustion requirement also promotes judicial efficiency … Moreover, even if only a small percentage of cases settles, the federal courts are saved the time normally spent hearing such actions and multiple appeals thereto… In cases in which inmate-plaintiffs exhaust their remedies in the administrative process and continue to pursue their claims in federal court, there is still much to be gained. The administrative process can serve to create a record for subsequent proceedings, it can be used to help focus and clarify poorly pled or confusing claims, and it forces the prison to justify or explain its internal procedures. All of these functions help courts navigate the sea of prisoner litigation in a manner that affords a fair hearing to all claims.

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (internal quotations and citations omitted).

The PLRA requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally

8

defective ... appeal." Id. at 83.[4]

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218.

### 2. The Administrative Process Available to Pennsylvania State Inmates

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, within fifteen days of the incident, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") (formerly known as Central Office) within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001). An inmate may not file the final appeal to SOIGA until he has received a response from the Superintendent.

---

[4] See also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 3. Application to this Case

Defendant concedes that as of July 13, 2016, when Lawson initiated this lawsuit in federal court, the officials at SCI-Forest had failed to respond to Lawson's initial grievance and that the policy deadline for doing so had expired. Defendant argues, however, that its response to the grievance several days later "cured" its error, such that Lawson was required to re-engage and complete in the administrative process even though he had already initiated litigation. Plaintiff contends that the prison grievance procedure was exhausted as soon as the administration failed to comply with the fifteen-day response deadline set forth in DC-ADM 804.

The evidence reveals that Plaintiff failed to properly exhaust the administrative remedy process as he did not raise his grievance through all levels of appeal. However, this Court must determine whether or not Plaintiff should be excused from the exhaustion requirement based on the Department of Corrections' non-compliance with the DC-ADM804. This determination turns on whether the administrative remedy process was available to Plaintiff. Robinson, 2016 WL 4010438, at *4.

In Small, 728 F.3d 265 (3d Cir. 2013), the United States Court of Appeals for the Third Circuit addressed a situation in which New Jersey prison officials failed to provide a response or decision to Small's prisoner grievances. The Court concluded that because the New Jersey administrative procedures did not provide a mechanism to appeal from a non-decision, the appeals process was unavailable to Small. Id. at 273.[5]

The facts of this case are somewhat different. Small failed to receive even a response to the grievances at issue, let alone a decision. Id. Here, the oversight by Ms. Smith was quickly

---

[5] Although the Small court cited cases from numerous other circuits for the conclusion that "the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable," it is unclear why it did so as that ruling was based on a case where no response was received.

10

cured and Lawson received a decision within days of the deadline. Lawson had every opportunity to proceed with his administrative remedies when he received Smith's denial of his grievance on July 16, 2015. See Newman v. Johnson, 2014 WL 6810702, at *3 (D.Del. Dec.3, 2014) ("An inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed." Oliver v. Moore, 145 Fed. App'x 731 (3d Cir. 2005). But instead, Plaintiff made the conscious decision to forego the second and third step appeals outlined in DC-ADM 804. All of the principles and policy considerations underlying the exhaustion doctrine continue to apply with full force and effect to Lawson. By refusing to re-engage in and complete the administrative process, Lawson deprived prison officials (and himself) of the opportunity to resolve his grievance.

Lawson will not be excused from the PLRA's exhaustion requirement as he has not demonstrated that the process was unavailable to him. See Smith v. Lindsey, 2015 WL 1651115, at *7 (M.D.Pa. Apr.14, 2015) ("In the absence of competent proof that an inmate was misled by correctional officers, or some other extraordinary circumstance, inmate requests to excuse a failure to exhaust" are generally rejected by the courts.).The motion for summary judgment will be granted.[6]

## IV. CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be GRANTED.

An appropriate Order will issue separately.

---

[6] Because Plaintiff failed to exhaust his administrative remedies in accordance with the Prison Litigation Reform Act, this Court need not reach the merits of Plaintiff's claims. See Nyhuis, 204 F.3d 65, 76 (3d Cir. 2000).

11

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

January 4, 2017